**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FRIENDS OF ANIMALS,**

**Plaintiff,**

**v.**

**SALLY JEWELL, in her official capacity as Secretary of the Interior,**

**Defendant.**

**Civil Action No. 15-16 (JDB)**

## MEMORANDUM OPINION

Friends of Animals (FOA), a not-for-profit environmental advocacy group, would like to know whether the spider tortoise and flat-tailed tortoise are endangered species. But the Department of the Interior has moved with the alacrity of the proverbial tortoise, and after waiting now almost two years, FOA has yet to receive a definitive answer. The Department's silence, FOA argues, has caused the group various injuries: it denies the group information to which it is entitled, for instance, and it makes advocating on behalf of animals more difficult. In this case, however, these supposed harms do not rise to the level of "concrete and particularized" injuries in fact, and the Court will grant the Department's motion to dismiss FOA's complaint for lack of subject-matter jurisdiction. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).[1]

## BACKGROUND

The Endangered Species Act gives the Secretary of the Interior authority to classify animal or plant species as "endangered" or "threatened." 16 U.S.C. § 1533(a).[2] But individual citizens

[1] See Gov't's Mem. in Support of Mot. to Dismiss [ECF No. 6-1] ("Gov't's Mot."); Pl.'s Opp'n to Gov't's Mot. [ECF No. 8] ("Pl.'s Opp'n"); Gov't's Reply to Pl.'s Opp'n [ECF No. 9].

[2] The Secretary has delegated this classification authority to the United States Fish & Wildlife Service. 50 C.F.R. § 402.01(b).

have a role to play in this classification process too. Congress has allowed any "interested person" the chance to submit a petition to the Secretary, asking that she add a species to the endangered or threatened list, reclassify a species already on the list, or remove a species from the list. 5 U.S.C. § 553(e); see also 16 U.S.C. § 1533(b)(3)(A).

The Department's receipt of such a citizen petition starts the clock on a series of deadlines. The first comes after about three months (and is called, appropriately enough, a 90-day finding). "To the maximum extent practicable," the ESA explains, the Department must make a finding within 90 days of receiving a petition "as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). If the 90-day finding is "negative"—that is to say, the petition does not "present[] substantial . . . information" suggesting that listing the species "may be warranted"—the listing process for the petition comes to a close. Id. §§ 1533(b)(3)(A), (C)(ii). But if the 90-day finding is "positive" (i.e., the petition does present the requisite "substantial information"), the Department's second deadline kicks in. In that case, the Department must undertake a more comprehensive review of the named species and—within one year of receipt of the original petition—issue the (again, appropriately named) 12-month finding. Id. § 1533(b)(3)(B).

The Department may reach one of three conclusions in these 12-month findings: (1) that the petitioned action is "warranted"; (2) that the petitioned action is "not warranted"; or (3) that the petitioned action is "warranted but precluded," meaning that it is a lower priority than other pending listing proposals. Id. § 1533(b)(3)(B). Each finding triggers unique responsibilities for the Department. If action is "not warranted . . . the Secretary shall promptly publish such finding in the Federal Register," and the petition process comes to an end. Id. § 1533(b)(3)(B)(i). If, however, the action is "warranted" based on the Department's year-long review, the Department

must publish in the Federal Register a notice of proposed rulemaking to implement the petitioned listing action. See id. § 1533(b)(3)(B)(ii). And if the action is "warranted but precluded," the Department must publish that finding in the Federal Register, along "with a description and evaluation of the reasons and data on which the finding is based." Id. § 1533(b)(3)(B)(iii).

The Department's failure to comply with these deadlines can, in some circumstances, subject the agency to judicial review. The ESA includes a citizen-suit provision, which explains that "any person may commence a civil suit on his own behalf . . . against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." Id. § 1540(g)(1). But there are limits to a citizen's ability to sue, including a provision that "[n]o action may be commenced . . . prior to sixty days after written notice has been given to the Secretary" of the alleged violation. Id. § 1540(g)(2)(C).

Friends of Animals hopes to take advantage of the ESA's citizen-suit provision here. The group is a "not-for-profit international advocacy organization" that "seeks to free animals from cruelty and exploitation around the world, and to promote a respectful view of non-human, free-living and domestic animals." Compl. [ECF No. 1] ¶ 5. To that end, on September 27, 2013, FOA (along with another advocacy group not party to this litigation) submitted two petitions to the Secretary, asking that she add the spider tortoise and flat-tailed tortoise to the endangered- or threatened-species list. See id. ¶¶ 20, 27. As FOA sees things, various factors call into question these animals' continued survival, including "habitat loss," "local consumption," "international trade in parts," and "the international pet trade." Id. ¶¶ 21, 28.

But one might say the Department has learned all too well the lesson of the tortoise in Aesop's famous child's tale. Its efforts to respond to FOA's petitions have been "[s]low" and (only arguably) "steady." The Hare and the Tortoise, in Aesop's Fables: A Classic Illustrated

Edition 12 (1990). It took almost nine months for the Department to announce its "positive" 90-day findings for both tortoise species. See id. ¶¶ 22, 29; see also 79 Fed. Reg. 32,900, 32,900 (June 9, 2014). And to date, the Department has yet to issue any 12-month findings concerning either species—even though almost 22 months have passed since FOA submitted its petitions. See Compl. ¶¶ 23–24, 30–31.

In light of this protracted timeline, on September 27, 2014, FOA sent the Secretary a notice of its intent to sue.[3] See id. ¶¶ 25, 32. And just over three months later, the group followed through on that notice, filing suit in this Court. See id. at 9. The complaint alleges that the Department has "failed to make a finding indicating whether the petitioned action was warranted within twelve months after receiving the petition[s] to list the spider tortoise [and flat-tailed tortoise] as threatened or endangered under the ESA." Id. ¶ 36; see also id. ¶ 37. Friends of Animals therefore requests various forms of relief, including a declaration that the Department violated the law, an order directing the Department "to issue rulemakings and findings on each of the [p]etitioned [s]pecies within sixty . . . days," and an award of costs and attorneys' fees. Id. at 8–9. The Department, for its part, has responded to the group's allegations, arguing that FOA lacks standing and that the complaint therefore "should be dismissed under Federal Rule of Civil Procedure . . . 12(b)(1) for lack of subject matter jurisdiction." Gov't's Mot. at 1.

## LEGAL STANDARD

"[I]n passing on a motion to dismiss . . . on the ground of lack of jurisdiction over the subject matter . . . , the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald,

[3] The Department responded to this notice by letter dated December 12, 2014. See Compl. ¶¶ 26, 33. The letter explained that the Department "did not anticipate submitting a twelve-month finding for the spider tortoise [and flat-tailed tortoise] until fiscal year 2017." Id. ¶¶ 26, 33

457 U.S. 800 (1982). Courts must therefore presume that plaintiffs' factual allegations are true and give plaintiffs every favorable inference regarding their alleged facts. See id. at 236; see also Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). There are limits to this plaintiff-friendly gloss, however. The presumption of truth does not extend to any "'legal conclusion[s] couched as . . . factual allegation[s],'" and the same goes for inferences that lack factual support in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Moreover, the party seeking to invoke the jurisdiction of the federal court bears the burden of establishing the court's jurisdiction. See U.S. Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).

But plaintiffs are not the only ones with jurisdictional responsibilities; the court also has an "affirmative obligation to ensure that it is acting within the scope of its . . . authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, "'plaintiff's factual allegations . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (2d ed. 1987)). And the court may consider material other than the allegations in the complaint in determining whether it has jurisdiction to hear the case—so long as it still accepts as true the complaint's factual allegations. See, e.g., Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1107 (D.C. Cir. 2005).

**DISCUSSION**

The Court has seen a case like this at least once before. Just last year, this Court handled Friends of Animals v. Ashe, 51 F. Supp. 3d 77 (D.D.C. 2014), which involved a complaint stemming from the (alleged) failure of the Fish and Wildlife Service to timely "issue[] the required 12-month findings" concerning some thirty different animal species, id. at 82. While noting that

"[t]he bulk of the parties' briefing [was] directed to the question whether FOA ha[d] properly alleged an injury-in-fact that would confer standing under Article III of the United States Constitution," the Court concluded that deciding that question was unnecessary. Id. at 83. And for good reason. There, the Court could avoid any thorny constitutional issues by disposing of the case on other grounds—namely, FOA's "failure to provide adequate notice of a statutory violation before bringing suit." Id. (citing Nw. Austin Mun. Util. Dist. No. 1 v. Holder, 557 U.S. 193, 205 (2009)). But no such alternative exists here—all agree that FOA met its notice obligations before knocking on the courthouse door. See Gov't's Mot. at 5. The Court must therefore address the question left unanswered in Ashe: does FOA have standing to pursue its claims in federal court?[4]

The answer can turn on any of three elements, which constitute "the irreducible constitutional minimum of standing": (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that a favorable decision on the merits will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).[5] But here, the parties are at loggerheads only over the injury-in-fact element, which requires FOA to show "an invasion of a legally protected interest"

[4] Friends of Animals halfheartedly suggests that the Court has already answered this question in the affirmative. It quotes a line from Ashe ("both parties marshal[ed] precedent in support of their theories of how Article III's standing requirement applies [to deadline suits]," 51 F. Supp. 3d at 83), and then reasons from this quotation that "once the Court finds that [FOA] has marshaled sufficient precedent to support standing, that should suffice." Pl.'s Opp'n at 1–2. But this badly misstates things. To start, the Court in Ashe never made any findings regarding the parties' dueling precedents—it did not, in other words, determine that one side's precedent was better than the other's, and it certainly did not conclude that FOA's precedent definitively established the group's standing to sue. Instead, the Court avoided this question entirely, disposing of the case on other, non-constitutional grounds. See Ashe, 51 F. Supp. 3d at 83. Moreover, a party seeking to establish standing must do far more than "marshal[] sufficient precedent." The standing inquiry is a case-specific one, and the burden is on "the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Warth v. Seldin, 422 U.S. 490, 518 (1975). Thus, it is factual allegations—not legal precedents—that ultimately guide the Court's resolution of the standing question.

[5] The ESA's citizen-suit provision does not change the focus of the Court's standing inquiry. As with other such provisions, 16 U.S.C. § 1540(g) "does not confer standing; it confers a right to sue upon parties who otherwise already have standing." Common Cause v. FEC, 108 F.3d 413, 419 (D.C. Cir. 1997) (per curiam). Thus, the Court still must closely inspect FOA's claims to constitutional standing—that is, has it suffered an injury that is fairly traceable to the Department's activities, and that is redressable by the Court? See Lujan, 504 U.S. at 560–61.

that is "concrete and particularized, and . . . actual or imminent." Id. at 560 (internal quotation marks and citations omitted). Friends of Animals believes it has carried this injury-in-fact burden, arguing that the Department has deprived it of information to which it is entitled, that it has suffered various organizational injuries, and that its members might lose recreational opportunities if the Department leaves these two tortoise species unprotected. See, e.g., Compl. ¶ 5. But none of these supposed injuries suffice here, as the Court will now explain.

## I. INFORMATIONAL (AND ORGANIZATIONAL) INJURIES

Friends of Animals primarily pins its standing hopes on an alleged "informational injury." Specifically (though—to be honest—not all that specifically), the group claims that the Department has "deprive[d] [it] and its members [of] information on the status of these species that is relevant to [the group's] work to advocate for the protection of these creatures." Compl. ¶ 1; see also id. ¶ 3. And according to FOA's president, this deprivation has caused it several problems—it has, for example, "symie[d] [the group's] ability to disseminate . . . accurate and up-to-date scientific information about the status of these species," "inhibited [its] fundraising," and "frustrated [its] ability to propose new legislation or policy." Decl. of Priscilla Feral [ECF No. 8-1] ("Feral Decl.") at 5. But for several reasons, these allegations do not rise to the level of an informational injury-in-fact.

First and foremost, the Court doubts that FOA's injury is really an "informational" injury at all. As described, the group seeks access to "information on the status of these [tortoise] species" (i.e., are they threatened? endangered? something else?), Compl. ¶ 1; see also id. ¶ 3, but that information does not even exist yet. Indeed, the whole point of FOA's complaint is that the Department has not yet made any 12-month findings regarding the spider and flat-tailed tortoise species, and thus that there is no status information to report. In truth, then, FOA is not seeking

pre-existing "information," but is instead seeking to compel the Department to comply with the ESA by making a decision along the statute's timeline that will generate information. See id. at 9 (asking the Court to "[o]rder the Secretary to issue rulemakings and findings on each of the [p]etitioned [s]pecies within sixty . . . days"). But abstract interests in agency compliance with the law do not confer standing, as many cases make clear. See, e.g., Nat'l Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1433 (D.C. Cir. 1995) ("[The injury-in-fact] showing requires more than allegations of damage to an interest in seeing the law obeyed." (internal quotation marks omitted)); Am. Farm Bur. v. EPA, 121 F. Supp. 2d 84, 98 (D.D.C. 2000) ("Plaintiffs' argument for informational standing presses . . . the same generalized grievance [in seeing the law enforced] that the court has already rejected.").

Prior case law underscores this point. In Common Cause v. FEC, for example, the D.C. Circuit noted that in informational-injury cases, "the nature of the information allegedly withheld is critical to the standing analysis." 108 F.3d at 417. And it drew a distinction between requests for information concerning "whether a violation of the law has occurred" (the denial of which would not satisfy the injury-in-fact requirement), and requests for specific information such as "how much money a candidate spent in an election" (the denial of which could constitute a cognizable injury). Id. at 418. Other cases toe the same line. See, e.g., Fed. Election Comm'n v. Akins, 524 U.S. 11, 23–25 (1998). And applying that line to the facts of this case reveals that FOA's allegations fall short. The group has not alleged that the Department withheld any specific, concrete information in its possession concerning the spider and flat-tailed tortoises (e.g., scientific studies or other evidence about the species' prospects for survival); its allegations, instead, focus on the Department's repeated failures to meet the various deadlines in the ESA's species-listing process. As far as the Court can tell, then, "what [FOA] desires is for the [Department] to [follow

the law], rather than disclose information. [But the group] has no standing to sue for such relief." Common Cause, 108 F.3d at 418.

Second, even if the Court were to construe FOA's complaint as alleging a true informational injury, the Court is unconvinced that the relevant provisions in the ESA give individual plaintiffs a "right" to such information. As the cases make clear, informational standing arises "only in very special statutory contexts," where a statutory provision "explicitly create[s] a right to information." Animal Legal Defense Fund, Inc. v. Espy, 23 F.3d 496, 502 (D.C. Cir. 1994). But this case does not fall under that "very special" umbrella. For one thing, the ESA merely requires the Department to "publish" its 12-month findings (along with certain other information) in the Federal Register, 16 U.S.C. § 1533(b)(3)(B), and FOA cites no case holding that such a generic publication requirement—without more—creates an "explicit[] . . . right to information." In fact, the group candidly admits that at least one case in this Circuit "appears to preclude basing informational standing on the mere fact [that] a statute requires publication of [an agency] finding" in the Federal Register. Pl.'s Opp'n at 13 (citing Friends of Animals v. Salazar, 626 F. Supp. 2d 102, 113 (D.D.C. 2009)).[6] The Court is hesitant to find an explicit informational right that no other federal court has recognized—and that at least one other court has (in quite similar circumstances) rejected.

That hesitation is doubly appropriate here in light of the ESA's overriding purpose. Courts will frequently look to a statute's purpose in making their right-to-information findings: if the statute's purpose is to "provid[e] information to the public," courts are more likely to conclude that the statute gives plaintiffs a judicially enforceable right to information, Bensman v. U.S. Forest

[6] Friends of Animals attempts to distinguish the Salazar case from this one, arguing (among other things) that the statute at issue here includes a robust, substantive publication requirement, and that FOA needs the information to continue to participate in the administrative process. See Pl.'s Opp'n at 13–17. The Court will address—and reject—those arguments infra at 13–15.

Serv., 408 F.3d 945, 958 (7th Cir. 2005); but if its purpose is something else entirely, plaintiffs will have more trouble establishing informational standing to sue, see Food & Water Watch, Inc. v. Vilsack, --- F. Supp. 3d ---, 2015 WL 514389, *15 (D.D.C. Feb. 9, 2015); see also Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc., 659 F.3d 13, 24 (D.C. Cir. 2011). Thus, a statute like the Federal Election Campaign Act—which is meant to root-out political corruption through "extensive recordkeeping and disclosure requirements"—comes with judicially enforceable public rights to information. Feld, 659 F.3d at 24 (internal quotation marks omitted). But a statute like the ESA—which is primarily meant "to conserve endangered and threatened species" and only imposes disclosure requirements "secondar[ily]"—likely does not.[7] Id. This Court, in short, remains unconvinced that FOA can demonstrate a right to any Department information—and thus it cannot establish a cognizable injury in fact.[8]

That conclusion holds for a third reason, as well: FOA has not explained how the Department's deprivation of information has caused it any concrete harm.[9] "It is," of course, "not enough . . . to assert that disclosure [of certain information] is required by law"; rather, plaintiffs hoping to assert an injury in fact also must show that they have "a concrete interest in the

[7] Feld addressed a different ESA disclosure provision than that at issue here. Compare 16 U.S.C. § 1539(c) with id. § 1533(b)(3)(B). Thus, that case (finding that an animal-rights organization lacked informational standing to sue) does not directly control the outcome of this one—though the Court considers it instructive.

[8] A recent D.C. Circuit opinion buttresses this conclusion. National Association of Home Builders v. U.S. Fish & Wildlife Service, 786 F.3d 1050 (D.C. Cir. 2015), affirmed the dismissal (for lack of standing) of a complaint brought pursuant to the ESA's citizen-suit provision. The plaintiffs in that case alleged that they had suffered a procedural injury "based on loss of opportunity to comment at the warranted-but-precluded stage" of the threatened-or-endangered-species listing process. Id. at 1052. But the Circuit rejected that procedural-injury argument, in part because "the warranted-but-precluded determination is a safety valve for the [Fish & Wildlife] Service [i.e., it allows the Service to balance the need to list a species against other agency priorities], not an escape hatch for beleaguered landowners." Id. at 1053. The upshot: the case provides one more data point to suggest that the ESA's species-classification procedures—even combined with the citizen-suit provision—are not intended to bestow concrete procedural (or informational) rights on plaintiffs, but to serve other, unrelated purposes.

[9] Friends of Animals alleges the same (supposedly) concrete injuries to support its informational- and organizational-injury theories. See Pl.'s Opp'n at 21 ("Here, for the very reasons [as] those that support . . . informational standing . . . , [Friends of Animals] can also adequately demonstrate[] an organizational injury caused by [the Department's] failure to issue the required 12-month findings."). Because these allegations (and the arguments surrounding them) overlap, the Court will spare the reader a separate discussion of their merit. Thus, the Court rejects FOA's organizational-standing arguments for the reasons described infra at 10–13.

information sought." Nader v. FEC, 725 F.3d 226, 229 (D.C. Cir. 2013). Put differently, "an organization's abstract interest in a problem is insufficient to establish standing, no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem." Feld, 659 F.3d at 24 (internal quotation marks omitted). As a result, "organizations who seek to do no more than vindicate their own value preferences through the judicial process generally cannot establish standing." Id. at 25 (internal quotation marks omitted). Yet that is exactly what is going on here, as a run through each of FOA's claimed injuries demonstrates.

Start with FOA's first allegation: that the Department's delays in the listing process have "stymie[d]" the group's ability to disseminate information to its membership. Feral Decl. at 5. To be sure, "[a]llegations of injury to an organization's ability to disseminate information may be deemed sufficiently particular for standing purposes where that information is essential to the injured organization's activities, and where the lack of the information will render those activities infeasible." Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin., 901 F.2d 107, 122 (D.C. Cir. 1990) (emphasis added). But as far as the record in this case is concerned, these "essential" and "infeasible" modifiers are inapt. "[FOA's] mission is to cultivate a respectful view of nonhuman animals, free-living and domestic," and it accomplishes this goal by (among other things) participating in conservation programs, promoting the protection of various animal species, and conducting "public outreach and education activities." Feral Decl. at 1–2. These activities might be laudable, but the Court fails to see how knowing the classification status of two tortoise petitions is "essential" to their accomplishment (or, put differently, how the denial of this information renders these activities "infeasible").[10] Thus, "without more," the Court can only

[10] FOA's (perhaps careful) factual allegations do not claim anything different. After all, the group merely says that the Department's lack of activity "stymies" information dissemination, and "stymie" in its verb form means to "block, check, [or] thwart." Webster's Third New Int'l Dictionary 2272 (1993). In other words, the Department's

conclude that FOA's "desire to supply environmental information to its members" is insufficient to show injury in fact. Found. on Economic Trends v. Lyng, 943 F.2d 79, 84–85 (D.C. Cir. 1991) (emphasis omitted).

The group's second injury allegation fares no better. As described, FOA claims that the Department's tardiness "has inhibited [the group's] fundraising" because it is "difficult to approach donors about [the group's] work without being able to provide information regarding the outcome of [its] efforts to promote legal protections for these [tortoise] species." Feral Decl. at 5. But again, the record does not support this conclusory allegation. Friends of Animals' declaration does not point to any dip in donations as a result of the Department's delayed response, and it has not submitted evidence regarding any specific, impending lost donations. Indeed, all the record reflects is the ipse dixit that "donors find it hard to give money for additional work . . . where . . . the government won't take action in response" to the group's petitions. Id. But this is not nearly enough—not when this Circuit has rejected injury-in-fact claims based on lost fundraising opportunities that were far more substantiated than this one. See, e.g., Nat'l Taxpayers Union, 68 F.3d at 1433–34 (describing a donor affidavit, which explained that a new government policy would "'absolutely' affect his future donations"). The rationale in that case applies just as well here: "[w]hether [the organization] will receive future donations from [a] particular member and how much those contributions might be is speculative"—and, thus, insufficient to find a concrete injury in fact. Id. at 1433.

The same result obtains despite FOA's final claimed injury—that the Department has "frustrated [the group's] ability to propose new legislation or policy." Feral Decl. at 5. This Circuit has suggested that "injury to an organization's advocacy" efforts might support standing in certain

---

failure to issue findings as to these two tortoise species might make certain FOA information-outreach efforts more difficult, but it does not necessarily make those efforts impossible.

circumstances. Feld, 659 F.3d at 27 (discussing but declining to decide the issue). But those circumstances do not exist here. For one thing, allegations that a government action has somehow "'frustrated' [a group's] [policy] objectives is the type of abstract concern that does not impart standing." Nat'l Taxpayers Union, 68 F.3d at 1433 (emphasis added); see also Feld, 659 F.3d at 26–27 (explaining that injury to an organization's advocacy goals only suffices "where the defendant's conduct is . . . clearly at loggerheads with the organization's mission" (internal quotation marks omitted)). And for another, FOA has failed to provide any specifics regarding this alleged injury—thus, the Court does not know what new "legislation" or "policy" the group would like to propose but cannot. Indeed, it seems possible that additional policy efforts regarding the spider and flat-tailed tortoise will become unnecessary. See Feral Decl. at 5 ("If these species were ultimately listed [as endangered or threatened], that would be the best situation of all."). This alleged injury is therefore the height of speculation; it is not, in other words, sufficiently "concrete" or "imminent" to constitute an injury in fact.

Of course, FOA disputes just about all of this. It first argues that section 1533 of the ESA does give environmental advocacy groups a right to information, because the law's Federal Register disclosure requirement is coupled "with a [citizen-suit] provision to enforce that requirement." Pl.'s Opp'n at 8. But FOA does not cite any case to support this publication-requirement-plus-citizen-suit-provision test—almost certainly because none exists.[11] Indeed, several cases make clear that FOA's proposed test cannot be the law. See, e.g., Feld, 659 F.3d at 24 ("[The] disclosure requirements [in Section 10 of the ESA, a statute that contains a citizen-suit

---

[11] One explanation: such a test would set an awfully low bar for informational standing. And this Circuit has already warned of the dangers of a too-generous standard for standing in the informational-injury context. See Lyng, 943 F.2d at 85 ("'[I]nformational injury,' in its broadest sense, exists day in and day out, whenever federal agencies are not creating information a member of the public would like to have. If such injury alone were sufficient, a prospective plaintiff could bestow standing upon itself in every case . . . .").

provision,] are secondary . . . and intended, not to provide a broad right to information . . . , but to allow interested parties to comment on and assist the Secretary's evaluation of permit applications."); Salazar, 626 F. Supp. 2d at 113 (holding that Section 10(d) of the ESA does not create an explicit right to information). Thus, the question remains whether 16 U.S.C. § 1533(b)(3)(B) creates an "explicit[] . . . right to information," Animal Legal Defense Fund, 23 F.3d at 502, in light of (for example) the provision's text and purpose, see Feld, 659 F.3d at 24. Simply put, it does not.

Friends of Animals persists that the Federal Register disclosure requirement at issue here must provide a right to information, because it requires publication of more than mere "notice that the agency has made a decision." Pl.'s Opp'n at 13. But again, no case establishes such an amount-of-information litmus test. Indeed, several cases suggest that the amount of published information is irrelevant to the question of whether plaintiffs have a right to the information. Consider Salazar, where the court rejected a right-to-information claim relating to a provision of the ESA that required the Secretary of the Interior to publish various substantive findings concerning granted permit applications. 626 F. Supp. 2d at 113; see also 16 U.S.C. § 1539(d) (requiring the Secretary to publish, among other things, a finding that the granted application would "not operate to the disadvantage of [an] endangered species"). Or consider West Virginia Highlands Conservancy v. Johnson, 540 F. Supp. 2d 125, 143 n.12 (D.D.C. 2008). There, this Court likewise found no right to information, even though the governing statute required the agency to publish a report that reflected a "detailed and comprehensive study" of an environmental hazard. 42 U.S.C. §§ 6982(f), (p). Thus, the statutes in both these cases required publication of more than mere "notice" of an agency decision; yet in both cases, the court rejected plaintiffs' informational-injury claims. This Court sees no reason why this case should come out differently.

But FOA has not given up on this line of argument just yet. It argues that the ESA must create a judicially enforceable right to information, because the group needs the information if it wants to continue to participate in the threatened- or endangered-species classification process. See Pl's Opp'n at 16. But there are several problems with this argument. For one thing (and once again), no case stands for such a right-to-information rule, and several cases would call any such rule into question. See, e.g., West Virginia Highlands Conservancy, 540 F. Supp. 2d at 143 n.12 (noting that the reports required by the governing statute in that case were to be used in later regulatory proceedings, but that "nothing . . . suggest[s] that Congress intended the public to be legally entitled to any particular information"). For another, the procedural injury the argument relies on is an imagined one. Only one of the three possible 12-month findings triggers additional administrative procedures—the "warranted" finding, which requires the Department to conduct a notice-and-comment rulemaking before adding a species to the threatened-or-endangered list.[12] See 16 U.S.C. § 1533(b)(3)(B)(ii). But the Department has not yet pulled that notice-and-comment trigger, because it has not yet announced a "warranted" finding for either of the two tortoise species. Thus, FOA cannot say that it has been (or, indeed, ever will be) deprived of its ability to participate in this process. It would be exceedingly odd to pluck a new informational-injury rule from such a "conjectural," "hypothetical" ground. Lujan, 504 U.S. at 560 (internal quotation marks omitted).

Shifting gears, FOA next argues that it need only allege a deprivation of information to establish standing—that is to say, it believes that it need not allege any separate, "concrete" injury in fact. See Pl.'s Opp'n at 18. But this is plainly incorrect. Plaintiffs must always show that they

[12] The other two available findings (remember: "not warranted" or warranted-but-precluded) come with no additional administrative steps—aggrieved petitioners' only recourse is to the courts. See 16 U.S.C. § 1533(b)(3)(C)(ii) ("[A]ny finding described in subparagraph (B)(i) or (ii) shall be subject to judicial review.").

have suffered a personal, concrete injury in order to satisfy the minimum standards for Article III standing. See Summers v. Earth Island Inst., 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."); see also id. ("[T]he party bringing suit must show that the action injures him in a concrete and personal way." (alteration in original) (internal quotation marks omitted)). To be sure, a plaintiff in a specific case proceeding under a certain statute might suffer a concrete, personal injury based on a deprivation of information alone. See, e.g., Nader, 725 F.3d at 229 ("Only if the statute grants a plaintiff a concrete interest in the information sought will he be able to assert an injury in fact."). But—as the Court has already concluded—this is not that kind of case, because FOA is not proceeding under such a statute. See supra at 9–10 (finding that section 1533 does not create a judicially enforceable right to information).

American Canoe Association, Inc. v. Louisa Water & Sewer Commission, 389 F.3d 536 (6th Cir. 2004), does not alter this analysis. Friends of Animals relies on this case to argue that—to the extent the group must allege some additional concrete injury—this injury "requirement should be liberally construed." Pl.'s Opp'n at 19 (citing American Canoe, 389 F.3d at 546). But that proposition does FOA no favors, for several reasons. First, American Canoe does not bind this Court—especially not where competing precedent from this Circuit casts doubt on the Sixth Circuit's rationale. See, e.g., Feld, 659 F.3d at 89–90; Lyng, 943 F.2d at 84–85. Second, even American Canoe acknowledges that informational standing arises where "Congress has provided a broad right of action to vindicate [an] informational right." 389 F.3d at 546.[13] But the provision of the ESA relevant to this case does no such thing, as this Court has explained. See supra at 9–

[13] In American Canoe, the Sixth Circuit found that the Clean Water Act did just that, because the CWA provided that "[a]ny records, reports, or information obtained under [one section of the Act] . . . shall be available to the public [unless the information contains trade secrets]." 33 U.S.C. § 1318(b); see also American Canoe, 389 F.3d at 539 (describing this provision).

10. And third, even if the Court were to "liberally construe" FOA's claimed injuries, the group's allegations would not suffice. As described, the injuries in FOA's complaint (and declaration) are speculative, vague, and conclusory, and thus do not adequately plead any injuries in fact. See supra at 10–13; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In sum, then, FOA has not met its burden to establish informational standing to pursue this claim.

## II. Injuries to Individual Members

This leaves FOA with one other alleged injury in fact: that suffered by its individual members, who (apparently) "recreate in the habitat of some of the [p]etitioned [tortoise] [s]pecies, and enjoy viewing them in the wild." Compl. ¶ 5. As FOA speculates, "[s]uch recreational opportunities could be lost, or at least made more difficult to enjoy, if [the Department] continues to fail in [its] duties under the ESA." Id. Organizations like FOA can stand in for their injured members in federal court, so long as the organization can show that "(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002).

But FOA's claim to this so-called "associational standing" stumbles at the first step. It is, of course, well-established that "the desire to use or observe an animal species, even for purely [a]esthetic purposes, is . . . a cognizable interest for purpose[s] of standing." Lujan, 504 U.S. at 562–63. But it is equally well-established "that the party seeking review [must show that he is] himself among the [aesthetically or recreationally] injured." Id. at 563; see also Seldin, 422 U.S. at 518. And FOA's minimal factual allegations do not make this showing. For starters, the group alleges only that its members recreate near "some" of the tortoise species in question. Compl. ¶ 5.

But there are just two species involved in this case, and it is impossible to tell which species falls into (or out of) this "some" category. Vague factual allegations like this simply do not suffice. See Interstate Natural Gas Assoc. of Am. v. FERC, 285 F.3d 18, 46 (D.C. Cir. 2002). Moreover, "[w]hen a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured. Rather, the petitioner must specifically identify members who have suffered the requisite harm." Chamber of Commerce of U.S. v. EPA, 642 F.3d 192, 199–200 (D.C. Cir. 2011) (internal quotation marks and citation omitted). Friends of Animals makes no effort to do so—neither its complaint nor its declaration identifies any member. Hence, FOA's claim to associational standing also fails, and the group ultimately does not argue otherwise. See generally Pl.'s Opp'n (failing to respond to the Department's motion on this score).

## CONCLUSION

The Court will therefore grant the Department of the Interior's motion to dismiss this case for lack of subject-matter jurisdiction based on FOA's failure to establish its standing to pursue this action. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 22, 2015